# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**ADAM GOTTSTEIN,**                    :

                                                           **3:17-CR-188**

                        **Petitioner**       :

        **v.**

                                                :        **(JUDGE MANNION)**

**SCOTT FINLEY,**                       :

                        **Respondent**       :

## MEMORANDUM

## I.    BACKGROUND

On April 23, 2020, petitioner Adam Gottstein filed, *pro se*, a 2-page letter Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A) and request for immediate transfer to home confinement, which the court construes as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, related to his 78-month sentence, due to the COVID-19 pandemic and his fear that he may contract the virus. (Doc. 697).[1] In particular,

---

[1]The court notes that although Gottstein cites to §3582(c)(1)(A) as the statutory basis for his motion, the court does not find his filing as a motion against the government. Rather, upon review, the court finds that it is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. *See* Cordaro v. Finley, 2020 WL 2084960 (April 30, 2020). Thus, Gottstein is the petitioner and the proper respondent is Scott Finley, Warden at FCI-Schuylkill. *See* 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such

Gottstein seeks the court to immediately release him from confinement in prison at FCI-Schuylkill, located in Minersville, Pennsylvania, to home confinement at his mother's house in Mount Pocono, Monroe County, Pennsylvania, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his alleged medical conditions, namely, "heat issues", "prediabetic" and "overweight", and alleged family history of various medical conditions, he will be at greater risk to suffer more severe complications. Alternatively, the court construes Gottstein's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

On June 2, 2020, Gottstein filed a motion for appointment of counsel seeking the court to appoint him "an attorney to file a motion for compassionate release." (Doc. 718). In this motion, Gottstein also reaffirms that there are no COVID-19 cases yet at FCI-Schuylkill. He further complains again about the conditions in the prison alleging inmates are locked down for over 22 hours per day, that they have no air conditioning, and that they have no access to filtered or fresh water. Gottstein alleges that the conditions should be considered as "cruel and unusual treatment."

After considering Gottstein's motion, the court will dismiss it insofar as it is §2241 habeas petition, without prejudice due to his clear failure to exhaust his administrative remedies with the federal Bureau of Prisons ("BOP") under 28 C.F.R. §§542.10, *et seq.* Insofar as Gottstein's filing is

---

party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, the court will refer to the Finley herein as the respondent.

considered as a motion for compassionate release, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i).[2] To the extent Gottstein is deemed as seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[3]

Finally, the court will direct the Clerk to more properly open Gottstein's emergency petition for transfer to home confinement based upon the Covid-19 as a petition pursuant to 28 U.S.C. §2241. The Clerk will then forward the appropriate paperwork to the petitioner for completion and return to the court, including the payment of the required filing fee or the presentation of an application to proceed *in forma pauperis.*

---

[2]Since Gottstein is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act in addition to a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

[3]Even though the government has not yet responded to Gottstein's motion, the court will dismiss it without prejudice to the extent it is a §2241 habeas petition due to his apparent failure to exhaust his BOP administrative remedies. Also, insofar as Gottstein's motion is one for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), the court can act *sua sponte* to dismiss it based on lack of jurisdiction.

## II.    DISCUSSION[4]

In his present motion, (Doc. 697), Gottstein seeks his immediate transfer from FCI-Schuylkill to home confinement and requests the court to allow him to serve the remainder of his prison sentence in home confinement alleging that he is at a higher risk if he contracts the COVID-19 virus based his stated alleged medical conditions. Gottstein is currently 33 years old and not in the high risk age category.[5]  Further, Gottstein points out that he has served "about 50%" without including any good conduct time or eligibility for home confinement. He also alleges that the BOP and FCI-Schuylkill "are doing a poor job of ensuring inmate[s] do not catch COVID-19 [virus]" and that "social distancing is impossible, the staff don't wear masks as recommended by the CDC and often don't wear gloves when on the Units." Gottstein concludes that he "feel[s] it's a matter of only time till [he] contract[s] the corona virus and [he] truly [is] afraid." it is nearly or likely a death sentence" due to his conditions.

---

[4]Gottstein is currently serving a 78-month prison sentence that was imposed on March 25, 2019, after he pled guilty to conspiracy to distribute and possess with intent to distribute heroin and cocaine base (crack) and fentanyl, 21 U.S.C. §846. The court also ordered Gottstein to be on five years of supervised release after he was released from prison.

[5]The court notes that it considered Gottstein's age as well as his physical condition stated in his PSR, (Doc. 534 at 2, 16), which that he reported "good physical health." Also, there was no report that he takes any medication for any medical condition. Further, Gottstein did not submit any BOP medical records to show that he has been diagnosed with any medical conditions.

Thus, Gottstein requests the court to direct the BOP to immediately place him in home confinement to complete the service of his prison sentence.

According to the BOP's website, as of May 18, 2020, there are no reported positive cases of the COVID-19 virus at FCI-Schuylkill.[6] Also, as respondent noted in Cordaro, id. (citing Doc. 544 at 20 n. 4), "that as of April 27, 2020, 'the BOP has reported zero positive cases of COVID-19 at any federal correctional institution located in Pennsylvania.'"[7]

As this court recently did in Cordaro, 2020 WL 2084960, *3, the court also construes Gottstein's instant filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal

---

[6] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro, *supra* (citing Doc. 544 at 15-18), and since many of the measures are found on the BOP's website, they are not repeated herein. Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

[7] The court notes that Monroe County where Gottstein wishes to be placed on home confinement with his mother as of May 18, 2020 there are 1254 positive cases there according to the Pa. Dept. of Health.

remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).[8]

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement"

---

[8]Compare Travis v. Carvajal, 2020 WL 2496920 (N.D. Ohio May 14, 2020). In Travis, the court disagreed with Comacho Lopez and similar courts, and found that an inmate's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 seeking his immediate release from prison in light of circumstances surrounding the COVID-19 pandemic, although he seeks relief "which falls within the ambit of habeas corpus relief", that "the basis for this relief is clearly grounded in his conditions of confinement at [the prison] and the alleged resulting constitutional violations." The court then found that since the inmate "does not challenge the execution of his sentence, §2241 is not the proper vehicle for his claims." In the instant case, the court finds that Gottstein is not challenging the conditions in FCI-Schuylkill and is not alleging that they violate his constitutional rights. Rather he is attacking the manner in which his sentence is executed, i.e., he seeks to have the remainder of his court ordered prison sentence altered to a sentence of home confinement. See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) ("[Third Circuit] ha[s] held that §2241 'confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence.'") (citations omitted). This court specifically sentenced Gottstein as follows: "The defendant is hereby committed to the custody of the [BOP] to be imprisoned for a total term of [78] Months." (Doc. 637). As such, "§2241 extends jurisdiction to claims concerning the execution of a federal inmate's sentence." Id. at n. 4.

"where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." *Id.* at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." *Id.* The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas petition. *See also* Verma v. Doll, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); Saillant v. Hoover, 2020 WL 1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in Verma and Camacho Lopez "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [Ali v. Gibson, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases and as well as in Cordaro, 2020 WL 2084960, *4, although Gottstein is not an ICE detainee awaiting his removal, he similarly seeks immediate release from custody at FCI-Schuylkill since he believes his health is in imminent risk at the prison due to its alleged unsafe conditions and the possibility that he may contract

the COVID-19 virus, which "is unequivocally a habeas remedy." United States v. Serfass, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). As the court in Camacho Lopez explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing Woodall, 432 F.3d at 241-44).

In his instant filing, as in Cordaro, 2020 WL 2084960, *4, Gottstein clearly seeks relief that affects the execution of his 78-month prison sentence since he requests the court alter its terms and to immediately release him to home confinement. *See* Cordaro, 2020 WL 2084960, *4. Gottstein does not challenge the conditions of his confinement at FCI-Schuylkill and seek damages or equitable relief, and thus his filing is not a civil rights action. *See* Parmeley v. Trump, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or Bivens, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

Gottstein does not claim to have filed an administrative remedy by submitting a request to the warden for release to home confinement due to the COVID-19 virus, pursuant to  BOP 5050.50. Nor does he allege that he should be excused from the exhaustion requirement. Further, Gottstein does not allege that attempting to file administrative remedies would be futile or that the COVID-19 virus along with his alleged medical conditions present an extraordinary situation in which exhaustion should be waived.

In any event, it is clear that Gottstein has not exhausted all of his BOP administrative remedies prior to his instant filing. First, Gottstein must file a request with Warden Finley for release to home confinement, and then he must file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Gottstein must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final administrative appeal in the process. *Id*.

Since Gottstein has not exhausted his administrative remedies available with the BOP regarding his habeas petition, the court will dismiss it without prejudice. *See* Furando v. Ortiz, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high

risk if contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

"There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." *Id.* at *3 (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). Generally, "an inmate's failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. §2241 is a proper basis for dismissal." *Id.* (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996)). Exhaustion may be excused in "exceptional cases", such as the futility exception which only applies in "narrowly-defined circumstances." *Id.* at *3-4 (citations omitted).

In the present case, similar to the Furando case and Cordaro, 2020 WL 2084960, *5, the court finds that Gottstein must exhaust all of his available BOP administrative remedies regarding any request for his release to home confinement. Even though the inmate in the Furando case was still waiting for his decision from the BOP as to whether he was eligible for release to home confinement under the BOP's guidelines pursuant to the CARES Act, and even though Cordaro was denied such release by Finley on April 18, 2020, this court found that the inmate must still pursue his remaining BOP administrative remedies to challenge the decision denying him release to home confinement. As in Cordaro, 2020 WL 2084960, *5, "[t]he circumstances of [Gottstein's] case fit squarely within the purposes of the exhaustion requirement." (citing Furando, 2020 WL 1922357, *3 (stating

recognized purposes of exhaustion requirement) (citing <u>Moscato</u>, 98 F.3d at 761-62)). The court finds that none of the exceptions to the exhaustion requirement exist in this case, especially since as this court pointed out in <u>Cordaro</u>, 2020 WL 2084960, *5, "there are no confirmed cases of the COVID-19 virus at FCI-Schuylkill."

As such, before the court will review any request by Gottstein for home confinement placement due to the COVID-19 virus, he must exhaust all of his administrative remedies. Thus, insofar as the court construes Gottstein's instant petition as a habeas corpus petition under 28 U.S.C. §2241, it will be dismissed without prejudice for failure to exhaust BOP administrative remedies. *See* <u>Cordaro</u>, 2020 WL 2084960, *5; <u>Furando</u>*, supra; see also* <u>Simmons v. Warden, FCI-Ashland</u>, 2020 WL 1905289 (E.D.Ky. April 17, 2020) (insofar as inmate was deemed as seeking habeas relief under §2241 with respect to his request for immediate release to home confinement claiming he satisfied criteria in the Attorney General's March 26, 2020 Memorandum to the BOP "regarding prioritizing home confinement of current federal inmates where appropriate in response to the ongoing COVID-19 pandemic" and claiming he was eligible for home confinement under the First Step Act, as amended by 18 U.S.C. §3582(c)(A)(1)(i), the court denied without prejudice habeas relief since inmate did not exhaust his administrative remedies within the BOP).

To the extent Gottstein's petition is construed as a motion for compassionate release from prison to home confinement under, 18 U.S.C.

§3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), it will also be dismissed without prejudice for failure to exhaust administrative remedies. *See* Cordaro, 2020 WL 2084960, *5; United States v. Alexander, 2020 WL 2468773, *5 (M.D.La. May 13, 2020) ("This Court, and other courts in this circuit, have recognized that the exhaustion requirement of §3582(c)(1)(A) is mandatory [even in light of the COVID-19 pandemic] and that, if a petitioner fails to exhaust his remedies, this Court must deny his motion for lack of jurisdiction.") (string citations omitted); United States v. Soliz, 2020 WL 2500127, *3 (S.D.Tx. May 14, 2020) (same) (citing United States v. Reeves, 2020 WL 1816496, at *2 (W.D.La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic ..., §3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."); United States v. Clark, 2020 WL 1557397, at *3 (M.D.La. Apr. 1, 2020) (denying motion for compassionate release based on fears of contracting COVID-19 in prison where defendant conceded he had not exhausted administrative remedies)).

Gottstein claims, without support, that he has underlying medical conditions putting him at a higher risk if he does contract COVID-19, and that based on his alleged conditions, and his allegation that FCI-Schuylkill is not adhering to the safety measures to protect inmates from contracting the virus, appears to contend that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i).

Nonetheless, Gottstein has not been exposed to the COVID-19 virus at FCI-Schuylkill. Further, Gottstein has not controverted with any evidence the substantial steps identified in the BOP's website and by respondent in the Cordaro case that the BOP is taking to protect the health and safety of both inmates and staff at the prison. As the court mentioned in Cordaro, 2020 WL 2084960, *5, "there are presently no confirmed cases of the COVID-19 virus at FCI-Schuylkill."

Thus, to the extent that Gottstein's instant filing is construed as a motion for compassionate release, it must be dismissed for lack of jurisdiction since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass." Cordaro, 2020 WL 2084960, *5 (quoting United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020); see also United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Cruz, 2020 WL 1904476 (M.D. Pa. Apr. 17, 2020). United States v. Early, 2020 WL 2572276 (W.D. Pa. May 21, 2020) (court held that before a prisoner can file a motion for compassionate release with the court he must exhaust all of his BOP administrative remedies and that exhaustion is mandatory).

Thus, even if Gottstein is deemed as alleging that "extraordinary and compelling reasons" justify his compassionate release from prison, the court

cannot address this since he has not exhausted his administrative remedies with the BOP as required. Cordaro, 2020 WL 2084960, *6 (citing Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [Gottstein] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence.")); Raia, 954 F.3d 594 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing18 U.S.C §3582(c)(1)(A)(i)); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power

to waive the exhaustion requirement."); Cruz, 2020 WL 1904476, *3; United States v. Early, 2020 WL 2572276 (W.D. Pa. May 21, 2020).

Further, the court finds that Gottstein does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. See Zukerman, 2020 WL 1659880, *3; Cruz, 2020 WL 1904476, *3. Rather, he merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who has the virus and he speculates that based on his alleged conditions he would suffer more severe complications if he did contract the COVID-19 virus. As the court stated in Cordaro, 2020 WL 2084960, *6, "[i]t must also be noted that [Gottstein] does not allege that he has contracted COVID-19 and he has not suffered any medical consequences from the virus since the pandemic started in the United States. Nor does anyone at the prison have the virus." In his recent motion for appointment of counsel, (Doc. 781), Gottstein concedes that there are no COVID-19 cases at FCI-Schuylkill.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison

15

environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

Finally, to the extent Gottstein is deemed as relying on the CARES Act, which was signed into law on March 27, 2020, as well as Attorney General Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.[9]

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

---

[9]Since the respondent in Cordaro, 2020 WL 2084960, included Barr's two Memoranda to the BOP as Exhibits 2 & 3, (Doc. 544-1), the court does not repeat the details of them. *See also* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, \*6.

As the court in United States v. Sawicz, 2020 WL 1815851, \*1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As this court recently stated in Cruz, 2020 WL 1904476, \*4 and in Cordaro, 2020 WL 2084960, \*7, "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citing United States v. Doshi, 2020 WL 1527186, \*1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, \*1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded

17

prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same). Thus, "[c]ourts … do not have power to grant relief under Section 12003 of the CARES Act." Id. (citations omitted); United States v. McCann, 2020 WL 1901089, *3 (E.D.Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

Recently in Soliz, 2020 WL 2500127, *4, the court stated:

> While the CARES Act allows the BOP Director to lengthen the amount of time a prisoner may be placed in home confinement, nothing in the Act grants individual prisoners the right to serve the remainder of their sentence in home confinement. The BOP still has exclusive authority to determine where a prisoner is housed. 18 U.S.C. §3621(b). Defendant's initial remedy to challenge this determination is by administrative action within the BOP. The proper vehicle to thereafter challenge the BOP's administrative decisions is a petition pursuant to 28 U.S.C. §2241, which must be filed in the same district where the prisoner is incarcerated [after first exhausting his administrative remedies]."

(citation and footnote omitted).

Thus, since Gottstein has not exhausted his mandatory administrative remedies with the BOP to the extent his instant filing is construed as a motion for compassionate release pursuant to the First Step Act of 2018, 18 U.S.C. §3582(c)(1)(A), the court will dismiss this motion without prejudice for lack of

jurisdiction. *See* United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("When a defendant fails to satisfy Section 3582(c)(1)(A)'s exhaustion requirement, a court is 'without jurisdiction to entertain [defendant's] request for compassionate release.'") (citations omitted); Boyles, 2020 WL 1819887, *2 (same); Raia, 954 F.3d at 597 (Third Circuit found that the defendants' failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release …."); Cruz, 2020 WL 1904476, *5; Cordaro, 2020 WL 2084960, *7; United States v. Berry, 2020 WL 1984117, *3 (this court held that "to the extent that Berry's motion is construed as seeking compassionate release, it would be dismissed for lack of jurisdiction since Berry has not exhausted her administrative remedies under §3582(c)(1)(A), ….") (citation omitted); *see also* United States v. Feiling, 2020 WL 1821457, *7 (E.D.Va. April 10, 2020) ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision.").

Finally, since Gottstein's motion is being dismissed, the court will deny his motion for appointment of counsel. (Doc. 718).

## III.    CONCLUSION

Based on the foregoing, that aspect of Gottstein's motion for transfer to home confinement related to the COVID-19 pandemic will be construed as a §2241 habeas petition, **(Doc. 697).** The Clerk will be directed to open it as a separate civil case and forward to the petitioner the appropriate

paperwork for such a petition to be completed, the petitioner will then return it with the appropriate filing fee or a completed application for *in forma pauperis* status. The petition will be **DISMISSED WITHOUT PREJUDICE** due to Gottstein's failure to exhaust his BOP administrative remedies under 28 C.F.R. §§542.10. To the extent that Gottstein's filing is considered as a motion for compassionate release, it is properly filed, will remain in his criminal case and be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as Gottstein is deemed as requesting the court to order the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Gottstein's motion for appointment of counsel, **(Doc. 718)**, will be **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 10, 2020**

17-188-02